John Burton, State Bar No. 86029
jb@johnburtonlaw.com
THE LAW OFFICES OF JOHN BURTON
128 North Fair Oaks Avenue
Pasadena, California  91103
Tel: (626) 449-8300

Erin Darling, State Bar No. 259724
erin@erindarlinglaw.com
LAW OFFICES OF ERIN DARLING
3435 Wilshire Boulevard, Suite 2910
Los Angeles, California  90010
Tel: (323) 736-2230

Attorneys for Plaintiff Joseph LaRocca

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH LaROCCA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, CHIEF MICHEL MOORE, OFFICER MICHAEL ANGEL OTAMENDI (42596), and DOES 2-10,<br><br>　　　　Defendants. | Case No. 2:22-cv-06948-SVW-PD<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS, BATTERY AND NEGLIGENCE**<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

1.　　Plaintiff asserts claims under 42 U.S.C. § 1983. Accordingly, subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343. Plaintiff's state-law claims form part of the same case and controversy, and are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367.

2.　　Plaintiff's claims arise out of a course of conduct involving police officials of the City of Los Angeles, in the County of Los Angeles, State of California, and within this judicial district. Accordingly, venue is appropriate in this Court.

## PARTIES

3. Plaintiff Joseph "Joey" LaRocca is an adult qualified to bring suit.

4. Defendant City of Los Angeles (City) is a political subdivision of the State of California. Defendant Los Angeles Police Department (LAPD) is an independent entity subject to suit. Defendant Michel Moore is the Chief of Police of the LAPD and is sued in his individual capacity as the relevant policy maker.

5. Defendant Michael Angel Otamendi (No. 42596) is employed by the LAPD as a police officer, was acting under color of law and within the course and scope of his employment, and shot Plaintiff in the head with a 40-millimeter impact weapon. He was sued in as Doe 1 in the initial complaint. (Plaintiff initially named as a Defendant Officer Emanuel Cuevas Ramirez (No. 42906). He has not appeared and is being dismissed voluntarily without prejudice.)

6. Does 2 through 10 are Defendant LAPD officers who are unnamed because their identities have yet to be ascertained.

7. The individually named defendant and each Doe defendant acted under color of state law and within the scope of their agency and employment with the City and the LAPD.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff filed the appropriate administrative claim on August 1, 2022, which was denied August 23, 2022. The lawsuit, and this First Amended Complaint, are timely.

## FACTS

9. Defendants City and LAPD have a long, well documented history of permitting and encouraging the wanton and unconstitutional use of so-called "less-lethal" munitions, which are also referred to as kinetic impact projectiles (KIPs), on people at public assemblies. The LAPD presently arms officers with 12-gauge shotguns that fire lead-pellet sock rounds, euphemistically called "beanbags," 37-millimeter devices that fire multiple projectiles of porous rubber, and the weapon used here, a

40-millimeter device that shoots a single plastic round about two-and-a-half inches long with a foam tip at 325 feet per second, absurdly referred to as an "eXact iMpact Sponge Round," that is neither exact nor sponge. Such 40-millimeter rounds have caused life-threatening brain injuries, including the fractured skull and subdural hematoma Plaintiff sustained here.

10.     In one notorious incident outside of Staples Center during the 2000 Democratic National Convention, the LAPD struck National Lawyers Guild observer and prominent Southern California civil-rights attorney Carol Sobel in the face, nearly blinding her with an earlier generation KIP. At a "May Day" immigration rally at MacArthur Park in 2007, LAPD officers attacked lawful demonstrators with less-lethal munitions, hitting members of the media in addition to demonstrators. More recently, the LAPD hit at least 12 people in the head with KIPs on May 30, 2020, during a single afternoon of protests over the Minneapolis police asphyxiation of George Floyd.

11.     In response to the George Floyd fiasco, the City Council ordered an investigation and report by independent counsel Gerald Chaleff, who performed a similar review of the 2007 May Day incident. In March 2021 Mr. Chaleff reported that the LAPD's two-hour training on the 40-millimeter is "problematic."

> The dynamics dramatically change in a crowd control situation when the person engaging in the criminal behavior is not standing still. There also may be other people in front, behind or to the side of the intended target. In such cases, the officer operating the 40mm weapon must be very precise in its application to minimize the risk to bystanders. The use of the 40mm weapon to fire at individuals who are in a crowd situation requires well-trained, experienced, and highly skilled individuals. Unfortunately, because of dynamic movement of large, unruly crowds, individuals who are not involved in criminal activity can unintentionally be hit and injured, which is alleged to have occurred during these protests. To be precise takes practice. Of further concern is that the policy from 2017 is silent on

1       the use of the 40mm weapon in crowd control situations.

2 Mr. Chaleff recommended the LAPD "analyze the use of the 40mm less lethal weapon
3 in situations with large crowds, or ones where people are standing close together, and
4 whether the use of such a weapon should be limited in such situations to individuals
5 well-trained and experienced, as was the LAPD policy until 2017."

6       12.     Mr. Chaleff made a number of additional findings relevant to this case:

7       (a)     The majority of reported KIP injuries were the result of 40-millimeter
8            rounds. Many of the victims claimed not to have engaged in hostile acts. Injuries
9            included impacts to the head and neck.

10      (b)     Videos showed officers quickly firing 40-millimeter rounds at distant
11           targets, which increased the likelihood of hitting an unintended target.

12      (c)     The deployment of less-lethal munitions was not always at the direction of
13           a supervisor. In some instances, officers armed with the 40-millimeter were
14           directed to be in front of a skirmish line with no direction or coordination.

15      (d)     The two hours of training was not sufficient given the skill level needed to
16           deploy the 40-millimeter in a chaotic public order policing environment.

17      (e)     Officers are only required to train once on the 40-millimeter, but using the
18           weapon in public order policing situations requires recurring training and re-
19           certifications.

20      (f)     The skill level required to deploy the 40-millimeter in chaotic public order
21           policing situations is high. Officers must be extremely competent and possess
22           excellent marksmanship skills. It is unlikely that all LAPD officers trained
23           possess the marksmanship skills necessary to competently deploy the weapon
24           under those circumstances.

25      (g)     The LAPD's Use of Force Tactics directive authorizing the 40-
26           millimeter has no detailed guidance on use in public order policing
27           situations.

28 This report and these findings gave the City, LAPD and Chief Moore actual notice.

- 4 -

13. On June 18, 2022, Plaintiff attended a concert near the 600 block of South Anderson Street in an industrial area of the City of Los Angeles. There were an estimated 400 to 500 people in attendance. Some ignited fireworks and others spray painted graffiti, but Plaintiff did not violate any laws. He was there simply to enjoy the live music, as were many others.

14. Multiple LAPD officers responded. Defendant Officer Michael Angel Otamendi shot Plaintiff in the left forehead with a 40 millimeter projectile, lacerating his face and knocking him to the ground. There was no justification for the shot, other than allegedly a person standing on a mound of dirt near Plaintiff may have been previously igniting fireworks. As shown in the LAPD video posted on YouTube, that individual, whose identity is not known to Plaintiff, was not posing an immediate threat at the time officer Otamendi fired. Defendants concede in the YouTube video that Plaintiff posed no threat.

15. The shot violated LAPD policy. "Less-lethal force options are only permissible when: An officer reasonably believes that a suspect or subject is violently resisting arrest or poses an immediate threat of violence or physical harm. Less-lethal force options shall not be used for a suspect or subject who is passively resisting or merely failing to comply with commands The 40mm shall not be used to target the head, neck, face, eyes, or spine unless lethal force is authorized."

16. Plaintiff is informed and believes that Officer Otamendi did not report that he had shot someone other than the individual who perhaps had previously ignited fireworks, nor that the person Officer Otamendi shot sustained a visible head injury and dropped to the ground in need of immediate medical attention. Instead, he acted like he did nothing wrong, ignoring Plaintiff's serious medical needs. Advancing LAPD officers found Plaintiff sprawled on the ground, struggling to regain consciousness, disabled by the gaping head wound. Instead of telling Plaintiff to lay still and summoning necessary medical attention to his location, however, the officers made Plaintiff stand and walk out of the area, where he ultimately had to fend for himself.

- 5 -

17. Plaintiff made it home and, with the assistance of family, presented that evening at the Glendale Adventist emergency department, where he was ultimately diagnosed with a fractured skull and subdural hematoma. The next day, June 19, he was admitted to the Glendale Adventist acute-care hospital, where he remained until June 20. Plaintiff has healed somewhat, but continues to suffer headaches, trouble with cognition and other neurological deficits. He has had multiple medical follow up visits and is still recovering. Some of the consequences, including neurological deficits, and a scar with a corresponding dent in his forehead appear to be permanent.

## DAMAGES

18. As a direct and proximate result of the aforesaid acts and omissions, and the customs, practices, policies and decisions of the Defendants alleged in this complaint, Plaintiff suffered and will continue to suffer great emotional, mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, and apprehension, and loss of enjoyment of life, which have caused, and will continue to cause, Plaintiff to sustain general damages in a sum to be determined at trial.

19. As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff incurred medical expenses, and will in the future incur medical expense, which have caused Plaintiff to sustain past and future special damages in a sum to be determined.

20. As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the defendants, Plaintiff suffered loss of income, and will in the future incur loss of income, which has caused him, and will in the future cause him, economic damages in a sum to be determined at trial.

21. The aforementioned acts of individual and Doe defendants, excluding defendants City and LAPD, were willful, wanton, malicious and oppressive, with reckless disregard for and deliberate indifference to Plaintiff and his constitutional rights, entitling Plaintiff to exemplary and punitive damages in according to proof.

# CLAIMS FOR RELIEF
# FIRST CLAIM FOR RELIEF
### INDIVIDUAL LIABILITY– 42 U.S.C. § 1983

(Against Defendants Officer Otamendi and Does)

22. The individual and Doe defendants, acting under color of state law, deprived Plaintiff of rights secured by the Constitution and laws of the United States, including under the First Amendment to be free from retaliation for engaging in protected speech and activity.

23. The individual and doe defendants, while acting under color of law, deprived Plaintiff of his civil rights secured by the Constitution and laws of the United States, including his rights under the Fourth Amendment to be free from unreasonable and excessive force, by shooting him in the forehead with a less-lethal munition without justification, forcing him to stand and walk with a serious head injury the LAPD inflicted, and then abandoning him without proper medical attention.

24. The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power that shock the conscience. They are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order. The above acts and omissions were consciously chosen from among various alternatives.

25. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff was injured in his health and person, and will continue to suffer general and special damages as alleged above.

26. The above mentioned individually named and Doe defendants, acted under color of law, and both separately and in concert. The aforementioned acts of those defendants, and each of them, were willful, wanton, malicious and oppressive,

1 with reckless disregard or with deliberate indifference and with the intent to deprive
2 Plaintiff of his constitutional rights and privileges, and did in fact violate the
3 aforementioned rights and privileges, entitling Plaintiff to exemplary and punitive
4 damages in an amount to be proven at the trial of this matter.

## SECOND CLAIM FOR RELIEF
## FAILURE TO INTERVENE – 42 U.S.C. § 1983
( Against Defendants Does)

27. The Doe defendants, including LAPD sergeants and other supervisors who were present, while acting under color of law, deprived Plaintiff of his civil rights secured by the Constitution and laws of the United States, including his rights under the First Amendment and the Fourth Amendment, as alleged above, by failing to intervene in the unlawful actions of other officers, including Officer Otamendi.

28. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff was injured in his health and person, and will continue to suffer general and special damages as alleged above.

29. The above mentioned Doe defendants, acted under color of law, and both separately and in concert. The aforementioned acts of those defendants, and each of them, were willful, wanton, malicious and oppressive, with reckless disregard or with deliberate indifference and with the intent to deprive Plaintiff of his constitutional rights and privileges, and did in fact violate the aforementioned rights and privileges, entitling Plaintiff to exemplary and punitive damages in an amount to be proven at the trial of this matter.

## THIRD CLAIM FOR RELIEF
## ENTITY AND SUPERVISORY LIABILITY – 42 U.S.C. § 1983
(Against Defendants City, LAPD and Moore)

30. Defendants City and LAPD, and the relevant policy maker, Chief Michel Moore, acted with deliberate indifference, and in conscious and reckless disregard to the

safety, security and constitutional and statutory rights of Plaintiff, and others similarly situated, including the right to be free from retaliation for engaging in protected speech and activity, and the right to be free from unreasonable and excessive force, under the First and Fourth Amendments.

31. Defendants City, LAPD, and the relevant policy maker, Chief Michel Moore maintained, enforced, tolerated, ratified, permitted, acquiesced in, and applied, among others, the following policies, practices and customs:

(a) Not adequately training, supervising and controlling officers in the use of so-called "less-lethal" ordnance at public gatherings, including the 40 millimeter launchers that were found by United States District Judge Consuelo B. Marshall to have been abused by LAPD. *Black Lives Matters Los Angeles v. City of Los Angeles*, C.D. Cal. Case No. 20-CV-5027 CBM (ASx). (Shooting Plaintiff violated paragraphs 2 and 4 of Judge Marshall's injunction, issued May 10, 2022.)

(b) Using excessive force, including unjustified less-lethal weapons, including the 40-millimeter launcher, in crowd control situations including peaceful, law abiding individuals such as Plaintiff.

(c) Failing to train officers to handle usual and recurring situations with which they must deal, including the use of "less lethal" force in crowd control situations, including during encounters with individuals who are engaging in cultural or First-Amendment protected activity;

(d) Failing to require officers to handle usual and recurring situations with which they must deal, including immediately reporting injuring force and summoning necessary medical attention;

(e) Failing to train officers not to instruct people with recent head injuries to stand up and walk, rather than summoning medical attention to the location; and

(f) Other policies, practices and customs as may be established through discovery to have been the moving force or proximate cause of Plaintiff's constitutional deprivations, including failure to train, failure to supervise, and

failure to discipline misconduct.

32. As a direct and proximate result of the customs, practices, policies and decisions of the aforementioned defendants, Plaintiff was injured in his health and person, and will continue to suffer general and special damages as alleged above.

## FOURTH CLAIM FOR RELIEF
## CALIFORNIA CIVIL CODE §§ 52 AND 52.1

(Against Defendants City, Officer Otamendi and Does)

33. As alleged above, Officer Otamendi and Does subjected Plaintiff to violence and interfered with his constitutional and statutory rights by way of threats, intimidation or coercion by shooting him in the head with a KIP and then forcing him to stand and walk without first receiving a medical assessment. Defendants violated Plaintiff's federal constitutional rights, as alleged above, and his state constitutional right to assembly as guaranteed by Article I, section 3(a) of the California Constitution, to be free from excessive force as guaranteed by Article I, § 13 of the California Constitution, and bodily integrity as guaranteed by California Civil Code § 43, among other things.

34. The City is vicariously liable for the actions of its officers, who were acting in the course and scope of their employment.

35. As a direct and proximate result of the aforesaid acts and omissions, of the aforementioned defendants, Plaintiff was injured in his health and person, and will continue to suffer general and special damages as alleged above.

36. The aforementioned acts of Officer Otamendi and the doe defendants, and each of them, were willful, wanton, malicious and oppressive, with reckless disregard or with deliberate indifference and with the intent to deprive Plaintiff of his constitutional rights and privileges, and did in fact violate the aforementioned rights and privileges, entitling Plaintiff to exemplary and punitive damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
## BATTERY BY A POLICE OFFICER

(Against Defendants City, Officer Otamendi and Does)

37. Officer Otamendi and Does intentionally or with deliberate indifference and recklessness, battered Plaintiff by shooting him in head with a 40-millimeter impact projectile without legally adequate justification, resulting in serious bodily injury to Plaintiff's person. Alternatively, the round was fired at another individual without justification, and the doctrine of transferred intent applies.

38. Plaintiff did not consent to being shot in the head by an LAPD officer.

39. As a direct and proximate result of the aforesaid acts and omissions, of the aforementioned defendants, Plaintiff was injured in his health and person, and will continue to suffer general and special damages as alleged above.

40. Defendants' use of unreasonable force was a substantial factor in causing Plaintiff's harm.

41. The City is vicariously liable for the actions of its officers, who were acting in the course and scope of their employment.

42. The conduct of the individual defendants was willful, wanton, malicious, and done with evil motive and intent and a reckless disregard for the rights of the Plaintiff and therefore warrants the imposition of exemplary and punitive damages against the individual Defendants (but not the entity Defendants) in an amount adequate to punish the wrongdoers and deter future misconduct.

## SIXTH CLAIM FOR RELIEF
## NEGLIGENCE

(Against Defendants City, Officer Otamendi and Does)

43. Defendants owed Plaintiff a duty of care and breached that duty by failing to exercise due care. As a direct and proximate result of the aforesaid acts and omissions, of the aforementioned defendants, Plaintiff was injured as alleged above.

44. Defendant City is vicariously liable for the negligence of its officers and agents, who were acting within the course and scope of their employment.

## PRAYER

WHEREFORE, Plaintiff requests relief as follows, and according to proof, against each defendant:

1. Past and future general damages in an amount according to proof;
2. Past and future special damages, including medical expenses and lost income, in an amount according to proof;
3. Exemplary and punitive damages against each individual and Doe defendant under the First, Second, Fourth and Fifth Claims for Relief, but not against the City or the LAPD, in an amount according to proof;
4. Costs of suit, including attorneys' fees, under 42 U.S.C. § 1988 and applicable provisions of California law; and
5. Such other relief as may be warranted or as is just and proper.

Dated: December 12, 2022   THE LAW OFFICES OF JOHN BURTON
LAW OFFICES OF ERIN DARLING

By: /S/ John Burton
John Burton
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated: December 12, 2022   THE LAW OFFICES OF JOHN BURTON
LAW OFFICES OF ERIN DARLING

By: /S/ John Burton
John Burton
Attorneys for Plaintiff